UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---
MICHAEL BELVIN, and MICHAEL MAYERS,

                Plaintiffs,

-against-

ELECTCHESTER MANAGEMENT, LLC,

                Defendant.
---

**MEMORANDUM & ORDER**
**17-CV-6303 (NGG) (MMH)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Michael Belvin and Michael Mayers bring this employment discrimination action against their employer, Defendant Electchester Management, LLC ("EML"). Trial is scheduled to begin in this case on November 2, 2022. Pending before the court are the parties' motions *in limine*. (*See* Pls. Mot. *in Limine* (Dkt. 74) ("Plaintiffs' MIL"); Def. First Mot. *in Limine* (Dkt. 70) ("Defendant's First MIL"); Def. Second Mot. *in Limine* (Dkt. 71) ("Defendant's Second MIL"); Def. Third Mot. *in Limine* (Dkt. 72) ("Defendant's Third MIL"); Def. Fourth Mot. *in Limine* (Dkt. 73) ("Defendant's Fourth MIL").)

For the reasons set forth below, Plaintiffs' MIL is GRANTED IN PART and DENIED IN PART; Defendant's First MIL is GRANTED; Defendant's Second MIL is DENIED; Defendant's Third MIL is DENIED; and Defendant's Fourth MIL is DENIED as moot.

## I. BACKGROUND

The court assumes the parties' familiarity with the factual background and procedural history in this matter and thus will summarize only those facts relevant to the instant motions.

Belvin began working as a porter for the Electchester co-op in 1999. (*See* Dec. 10, 2020 Mem. & Order re Summ. J. ("Summary Judgment Opinion") at 2.) Mayers started working as a porter for the Electchester co-op in 2004. (*Id.* at 8.) Both remained in

1

their positions in 2007, when EML was formed to manage the housing complex. (*Id.* at 2, 8.)

The Plaintiffs brought claims regarding a variety of incidents they claim were discriminatory or retaliatory in nature, or constituted a hostile work environment. These claims were brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. §§ 1981 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.* Mayers additionally brought claims pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12111.

Following the Summary Judgment Opinion, the following claims remain at issue: (1) both Plaintiffs' claims for hostile work environment and racial discrimination claims premised on their disparate treatment due to being subjected to a hostile work environment, under Title VII, 42 U.S.C. § 1981, NYSHRL, and NYCHRL; (2) Belvin's claim for retaliation under Title VII, 42 U.S.C. § 1981, NYSHRL, and NYCHRL; (3) Mayers's claim for disability discrimination under the ADA and NYCHRL, premised on his termination and denial of bonus; and (4) both Plaintiffs' claims for garden variety emotional distress damages.

## II. LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[1] "A court will exclude evidence on a motion *in limine* only if it is clearly

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

inadmissible on all potential grounds." *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, No. 14-CV-858 (NGG) (PK), 2019 WL 1365752, at *2 (E.D.N.Y. Mar. 26, 2019). At trial, the courts may also exercise discretion "to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## III. DISCUSSION

### A. Plaintiffs' Motion *in Limine* to Exclude the Testimony of EML's Expert Psychologist

Plaintiffs seek to preclude the testimony and report of EML's psychological expert, Dr. Mark Siegert, Ph.D., in whole or in part. Dr. Siegert produced an expert report in which he detailed Mayers's psychiatric treatment history and personal history, and the results of Dr. Siegert's psychological examination of Mayers. (*See generally* Dkt. 74-2 ("Dr. Siegert's Report").) To preclude the entirety of the testimony and report, Plaintiffs argue that Dr. Siegert's Report and any testimony based thereon are irrelevant under Federal Rules of Evidence 401 and 402. (*See* Plaintiffs' MIL at 6.) Specifically, Plaintiffs argue that Mayers's mental health is not at issue unless Plaintiffs plan to put forward their own expert witness, and they disavow any plan to do so. (*Id.* at 9) As discussed further below, this objection to Dr. Siegert's testimony is without merit.

However, Plaintiffs' objections to specific portions and conclusions of Dr. Siegert's Report raise significant evidentiary issues. *First*, Plaintiffs argue that Dr. Siegert's Report provides impermissible conclusions regarding Mayers's state of mind and credibility under Federal Rule of Evidence 702. (Plaintiffs' MIL at 3-5.) *Second*, Plaintiffs argue that Dr. Siegert's Report provides irrelevant

3

and unfairly prejudicial information regarding Mayers's family background, criminal history, and past alcohol and drug use, and should be excluded from evidence pursuant to Federal Rules of Evidence 401, 402 and 403. (*Id.* at 6-9.) On both points, Plaintiffs assert that Dr. Siegert should be precluded from testifying regarding these portions of the report. The court agrees.

### 1. Relevance of Dr. Siegert's Report Generally

Mayers's mental health history is plainly relevant to Plaintiffs' claim for garden variety emotional distress. The Federal Rules of Evidence define relevant evidence as that which "has *any* tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The Second Circuit has characterized the bar for relevance as "very low." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012); *see also Hamza v. Saks Fifth Ave., Inc.*, No. 07-CV-5974 (FPS), 2011 WL 6187078, at *6 (S.D.N.Y. Dec. 5, 2011) (describing Rules 401 and 402 as "permissive and intended to lead to liberal admission of evidence"). By this low standard, a plaintiff's history of mental illness certainly is relevant to a determination of emotional distress damages: diagnoses and symptoms predating the relevant conduct may show the jury that some or all of Mayers's emotional distress was caused by factors other than EML's conduct. *See Hartman v. Snelders*, No. 04-CV-1784 (CLP), 2010 WL 11626508, at *21 (E.D.N.Y. Jan. 28, 2010) (holding that a plaintiff's extensive history of mental illness "is relevant to causation and damages" and denying motion *in limine* seeking exclusion of such evidence). Expert analysis regarding alternate causes of stress or other negative emotions may similarly affect the jury's calculation of damages. *Id.*

Plaintiffs' argument regarding the expert report is premised on a misapplication of the psychotherapist-patient privilege, rather than relevancy. That testimonial privilege was established in

4

*Jaffee v. Redmond*. *See* 518 U.S. 1, 9-10 (1996). Like other testimonial privileges, though, the psychotherapist-patient privilege may be waived, and such waiver may be express or implied, including by bringing a claim that places the plaintiff's mental health at issue. *Id.* at 15 n.14; *see also In re Sims*, 534 F.3d 117, 131-32 (2d Cir. 2008). The issue of whether the privilege applies or has been waived typically arises from an assertion of the privilege in the context of discovery requests for mental health medical records or for a mental examination pursuant to Federal Rule of Civil Procedure 35. *See, e.g., Greenberg v. Smolka*, No. 03-CV-8572 (RWS) (MHD), 2006 WL 1116521, at *7 (S.D.N.Y. Apr. 27, 2006) (granting protective order against disclosure of communications between plaintiff and her psychotherapist); *Jarrar v. Harris*, No. 07-CV-3299 (CBA) (JO), 2008 WL 2946000, at *7 (E.D.N.Y. July 25, 2008) (denying defendant's motion to compel mental examination under Fed. R. Civ. P. 35, which requires the party's mental condition be "in controversy"). Although early cases "ha[d] not developed a consistent approach to whether and when waiver [of the privilege] is properly inferred," *Hershey-Wilson v. City of New York*, No. 05-CV-2714709 (KMK) (JCF), 2006 WL 2714709, at *1 (S.D.N.Y. Sept. 20, 2006), the Second Circuit has held that a claim for "garden variety" emotional distress damages is insufficient to put the plaintiff's mental health "in controversy" or find implied waiver. *Sims*, 534 F.3d at 138, 140-41.[2]

---

[2] "Claims of emotional distress that are 'garden variety' are simple or usual," as contrasted with claims (such as intentional or negligent infliction of emotional distress) that a defendant's actions "result[ed] in a specific psychiatric disorder." *Jessamy v. Ehren*, 153 F. Supp. 2d 398, 401 (S.D.N.Y. 2001). In other words, garden variety claims are those which allege that a claimant was "scared, embarrassed, shamed, [or] humiliated," *Jarrar v. Harris*, No. 07-CV-3299 (CBA) (JO), 2008 WL 2946000, at *5 (E.D.N.Y. July 25, 2008), as opposed to actions seeking recovery for "serious psychological injury, that is, the inducement or aggravation of a diagnosable

5

There is no indication in the record that Plaintiffs claim EML's alleged discrimination caused a "serious psychological injury," and Plaintiffs have made clear that they do not plan to prove their case with expert testimony. But Mayers waived the psychotherapist-patient privilege by producing his mental health records, (*see* Dr. Siegert's Report at 5-8 (detailing the psychiatric records that Dr. Siegert reviewed in preparing the report)), submitting to a psychological evaluation with Dr. Siegert (*id.* at 15-29 (providing conclusions of evaluation)), and providing deposition testimony regarding his mental health history. (*Id.* at 13-14.) *See Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002) (holding that producing materials to adversary is sufficient to waive work product privilege); *Speedfit LLC v. Woodway USA Inc.*, No. 17-CV-768, 2019 WL 1441148, at *6-7 (E.D.N.Y. Mar. 28, 2019) (finding waiver of attorney-client privilege where purportedly protected information was voluntarily disclosed to and entered into evidence without objection by litigation adversaries). Now that the evidence has been produced without any assertion of the psychotherapist-patient privilege, Plaintiffs cannot seek belated protection from the more lenient standard of Rule 402.

### 2. Usefulness of Dr. Siegert's Expert Testimony to the Jury

Federal Rule of Evidence 702 allows for expert testimony where the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony fails to meet this standard when it "usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *see also United States v. Duncan*, 42 F.3d

---

dysfunction or equivalent injury." *Greenberg*, 2006 WL 1116521, at *6 (collecting cases).

97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.") (emphasis in original). "It is a well-recognized principle of our trial system that determining the weight and credibility of a witness's testimony belongs to the jury[.]" *Nimely*, 414 F.3d at 397. As a result, expert testimony regarding the credibility of other witnesses is inadmissible under Rule 702, regardless of whether that testimony is "rooted in scientific or technical expertise." *Id.* at 398.

While Dr. Siegert's Report opines on the impact of Mayers's past mental health diagnoses on his emotional state, as discussed *supra*, much of the report is instead devoted to the opinion that Mayers's "deficits ... make it impossible to have confidence in the accuracy of how he interprets events in his life, including at the workplace." (Dr. Siegert's Report at 29-30.) Throughout the report, Dr. Siegert opines that based on his examination, Mayers falls into a category of individuals "likely to be suspicious, hostile, and overly sensitive" and "externalize blame for their problems, frustrations and failures [or] have persecutory ideas[.]" (*Id.* at 19.) These conditions make Mayers "unreliable," likely to "believe that others talk about them and have it in for them," or "paranoid." (*Id.* at 19-20.)

Regardless of the scientific rigor of Dr. Siegert's examination, these observations directly attack Mayers's credibility as a witness to his own (and Belvin's) discrimination. If Mayers is (in the opinion of a psychologist) paranoid and inclined to believe people "have it in for [him]," the theory goes, he must have misunderstood or invented his interactions with EML and falsely attributed discriminatory intent; the jury therefore should not believe him. (*Id.* at 30.) Dr. Siegert's Report's conclusion plainly states that goal: to call into question "the accuracy of how [Mayers] interprets events ... at the workplace." (*Id.*) But it is the

7

jury's province to determine whether Mayers's version of events is credible, not that of an expert witness. *See United States v. Hamlett*, No. 19-3069, 2021 WL 5105861, at *2 (2d Cir. Nov. 3, 2021) (summary order) (affirming district court's decision to exclude expert testimony regarding witnesses' mental health in part because it "would likely constitute an evaluation of witness credibility").

EML argues that Dr. Siegert's observations "are limited to . . . diagnosing any relevant mental health conditions and medically evaluating the severity and extent of [Mayers's] purported emotional distress." (Opp. to Plaintiffs' MIL (Dkt. 75) at 10.) As discussed above, such expert testimony is relevant and admissible. For instance, Dr. Siegert's opinion that Mayers "has significant distress caused by a combination of a pre-existing mental illness coupled with the added distress of having a threatening physical illness" does not usurp the jury's role in determining credibility. (Dr. Siegert's Report at 30.) Accordingly, Dr. Siegert will be permitted to testify regarding the impact of independent factors on Mayers's mental health, such as mental health diagnoses that predated the conduct at issue in this case, or potential alternate causes of Mayers's stress that would mitigate the damages caused by EML. But Dr. Siegert is precluded from testifying regarding his diagnosis of Mayers's paranoia or unreliability, and from raising any similar questions regarding Mayers's ability to accurately perceive the motivations and actions of those around him. EML is instructed to ensure that any expert testimony does not call into question Mayers's credibility as a witness, as any such testimony is inadmissible under Rule 702.

   3. Relevance and Prejudice of Dr. Siegert's Summary of Mayers's Personal History

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403," *Nimely*, 414 F.3d at 397, pursuant to which

"[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, [or] confusing the issues[.]" Fed. R. Evid. 403. Because of the significant value juries may place on expert testimony, the Supreme Court has cautioned that Rule 403 "exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).

Dr. Siegert's Report included descriptions of Mayers's marital status and current relationship, as well as that of his parents (Dr. Siegert's Report at 15-16); that Mayers had a drinking problem and used drugs when he was younger, but has been sober from both alcohol and drugs for 22 years (*id.* at 16); and that Mayers was arrested once on a drug charge approximately 30 years ago, but his record was later cleared (*id.* at 16-17). EML argues that Dr. Siegert included this information, and presumably would testify to it, as "general background information;" in addition, Mayers's decades-old history of alcohol usage is specifically relevant because "excessive alcohol use is common in people" with Mayers's psychological test results. (Opp. to Plaintiffs' MIL at 11-12.)

It is unclear to the court that Mayers's family background, history of alcohol or drug use, or criminal background have any relevance to this case, even under Rule 402's lenient standard. None of these facts are helpful in assessing Mayers's claims or any possible defenses. Nor does EML claim that any of these points (other than Mayers's possibly "excessive" alcohol use 22 years ago) were relevant to Dr. Siegert's analysis and diagnoses. The court sees no probative use at trial for any of these points, including any long-past struggles Mayers had with alcohol. *See United States v. Krug*, No. 15-CR-157 (RJA), 2019 WL 3162091, at *6 (W.D.N.Y. July 16, 2019) (holding evidence of a witness's prior use of alcohol or drugs other than during the events discussed in testimony was inadmissible as irrelevant).

9

Even if the court were able to find a relevant purpose for these points, there would remain significant concerns about their prejudicial effect. *See Passino v. Tucker*, No. 17-CV-1028 (DJS), 2021 WL 2766979, at *5 (N.D.N.Y. July 1, 2021) (holding that evidence of past instances of intoxication, even if relevant, were unfairly prejudicial under Rule 403). The primary effect of such references to Mayers's (distant) past will be to embarrass and shame him before the jury. Accordingly, EML may not introduce any evidence of, and Dr. Siegert is precluded from testifying regarding, Mayers's family background, marital status, past alcohol or drug use, and arrest or other criminal record, or any other similar evidence.

For the reasons discussed above, Plantiffs' MIL is GRANTED IN PART and DENIED IN PART.

### B. EML's Motions *in Limine*

#### 1. Evidence of Bill Gambrell's Statements

EML states that testimony and evidence regarding racist statements made by Bill Gambrell, Plaintiffs' former supervisor, should be excluded. (*See generally* Defendant's First MIL.) EML states that it was formed as a legal entity in 2007; prior to that date, the Electchester co-op was run by five different housing companies with no central organization and who managed their own staffing. (*Id.* at 1.) Gambrell worked as a General Manager under that earlier structure, but was never employed by EML. (*Id.* at 1-2.) But the conduct and statements which Plaintiffs wish to introduce into evidence occurred in 1999, 2000, and 2002. (*Id.* at 2.) As a result, EML argues that Gambrell's statements cannot be imputed to EML and are therefore irrelevant under Federal Rule of Evidence 402; even if relevant, they are unduly prejudicial under Federal Rule of Evidence 403. (*Id.* at 3.)

In response, Plaintiffs argue that EML is successor-in-interest to Gambrell's employer, and therefore inherited any liabilities resulting from Gambrell's conduct. (Plaintiffs' MIL at 4-5.) At the outset, the court notes that this terminology is misplaced: statements from 2002, on their own, cannot support liability against EML (regardless of whether EML inherited its predecessor's liabilities) because they are untimely. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). EML's argument that the evidence must be excluded because the acts would not support a timely claim for liability is similarly misplaced, though, as the statute does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* at 113.[3]

For a variety of reasons, it is unclear whether testimony regarding Gambrell's statements is relevant evidence. Whether Gambrell's conduct can be imputed to EML could turn on several tangential legal questions, requiring analysis of topics including EML's formation and the extent to which it retained management from its predecessor, Gambrell's role within the predecessor entities, and the nature of his employment relationship with the Plaintiffs. It may also potentially implicate whether and when Plaintiffs reported Gambrell's behavior to management. Even if relevant, it is unclear whether Plaintiffs' testimony on this topic would even be admissible as a party-opponent statement. *See* Fed. R. Evid. 801(d)(2).

In any event, the court holds that testimony regarding Gambrell would confuse the issues and the jury in a manner that substantially outweighs the limited probative value of 20-year-old

---

[3] *Morgan* also stated that "[h]ostile environment claims are different in kind from discrete acts" because they "involve[] repeated conduct" and therefore, the continuous violation doctrine can bring otherwise untimely acts within the statute of limitation. *Morgan*, 536 U.S. at 115. As Gambrell's statements are being offered as background evidence and not as the basis for an independent claim, the court declines to address whether the continuing violation doctrine would apply here.

statements from an employee who has long since left the company. *See* Fed. R. Evid. 403. The statements in question are remote in time and would only be useable as background evidence of the work environment, not as direct evidence. It would be a poor use of judicial resources and the parties' time to conduct a mini-trial focused on determining whether EML is responsible for Gambrell's statements. And introducing statements made 20 years ago may confuse the jury, who is asked to determine whether Plaintiffs were subjected to a hostile work environment far more recently.

Accordingly, Plaintiffs are precluded from submitting evidence regarding Gambrell's statements and conduct, and Defendant's First MIL is GRANTED.

### 2. Testimony Regarding Non-Party Complaints of Discrimination by EML

EML next asks the court to preclude testimony from two non-party EML employees, David Hewlett and Jerome Jenkins, regarding their own experiences of discrimination while working at EML, as well as Hewlett's subsequent EEOC complaint. (*See* Defendant's Second MIL.) Specifically, EML points to Plaintiffs' stated intention to have Hewlett "testify regarding Defendant[']s discriminatory practices against black employees . . . including filing his own EEOC complaint against Defendant and being pressured to withdraw the EEOC case by Vito Mundo." (*Id.* at 5-6 (citing the Joint Pre-Trial Order (Dkt. 57).) Jenkins would testify "how the Plaintiffs and himself were subjected to discriminatory practices" when he worked for EML. (*Id.*) EML complains that incidents of discrimination against non-parties are irrelevant because Plaintiffs do not bring a pattern or practice claim and, even if they offer some probative value, are unfairly prejudicial and may confuse the issues under Federal Rule of Evidence 403. (*See* Defendant's Second MIL.)

12

EML appears to ask the court to exclude Hewlett and Jenkins's testimony in its entirety. But Plaintiffs indicate both Hewlett and Jenkins would also testify as witnesses to incidents of harassment experienced by the Plaintiffs themselves. (*See* Pls. Opp. to Def.'s Mot. in Limine at 3.) First-hand testimony of events involving Plaintiffs is plainly relevant, and the court will not preclude this evidence.

With respect to Hewlett and Jenkins's own experience of race-based harassment in the workplace, many of the cases on which EML relies excluded testimony that was not based on personal knowledge, such as hearsay, rather than on relevance grounds. *See, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999). On the current record, it appears both Hewlett and Jenkins will testify to their personal experiences at EML and events to which they were direct witnesses, so no hearsay issues are presently before the court.

"[H]arassment experienced by other employees is relevant to hostile work environment claims," provided the evidence of such harassment is otherwise admissible, like first-hand testimony. *DeMarco v. West Hills Montessori*, 350 F. App'x 592, 594 (2d Cir. 2009) (summary order) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) and *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150-51 (2d Cir. 1997)). "Since one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant. Thus, . . . in a hostile workplace case, the trier of fact must examine the totality of the circumstances, including evidence of . . . harassment directed at employees other than the plaintiff." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150-51 (2d Cir. 1997).

Therefore, testimony from other members of Plaintiffs' protected class of their own experiences of harassment or discrimination is directly relevant to Plaintiffs' claims of hostile work environment.

Indeed, such evidence may be central to proving Plaintiffs' case. And there is no risk of confusing the issues, as evidence of Hewlett and Jenkins's own experiences of discrimination at EML is probative of whether the work environment was hostile to its employees on the basis of their race—the exact issue being presented to the jury.

Next, Hewlett's alleged experience of retaliation—that Vito Mundo, EML's general counsel, pressured him to withdraw his EEOC complaint—is identical to that raised by Belvin. There is no *per se* rule that evidence of discrete acts of discrimination or retaliation towards non-parties is irrelevant or unduly prejudicial; instead, the court must determine admissibility "in the context of the facts and arguments in a particular case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). When such evidence is sufficiently similar to the claims raised in the case—for example, when the conduct was engaged in by the same actor, or the actions occurred close in time or space to the plaintiff's experience—it is relevant. *See Schneider v. Regency Heights of Windham, LLC*, No. 14-CV-217 (VAB), 2016 WL 7256675, at *12 (D. Conn. Dec. 15, 2016) (weighing factors under which prior experiences of third parties are sufficiently similar). As a result, "it is well established in the Second Circuit that one way to establish retaliation is to demonstrate that other people who have participated in protected activity have been treated adversely and similarly to plaintiffs." *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 579 F. Supp. 2d 455, 460 (S.D.N.Y. 2008) (citing *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 141 (2d Cir. 1993), *Taitt v. Chem. Bank*, 849 F.2d 775, 778 (2d Cir. 1988)). Accordingly, Hewlett's testimony regarding EML's retaliation for filing an EEOC complaint is admissible.

Finally, EML also argues that Hewlett and Jenkins were not deposed and their claims of discrimination were not subject to

discovery. (*See* Defendant's Second MIL at 6.) Even a cursory review of the record shows that this was an issue of EML's own making. At their depositions, both Mayers and Belvin discussed Hewlett and Jenkins as witnesses to Plaintiffs' discrimination, and detailed how Hewlett and Jenkins faced similar hostility and retaliation at EML. (*See* Pls. Opp. to Def.'s Mot. in Limine at 3.) Had EML wished to depose these witnesses, it should have sought to do so while discovery remained open.

Accordingly, Defendant's Second MIL is DENIED.

### 3. Golden Rule and Reptile Theory Arguments

EML argues that the Plaintiffs should be precluded from making arguments based on either the "golden rule" or the "reptile theory." (*See generally* Defendant's Third MIL.) The golden rule "tactic," as EML describes it, occurs when counsel tells the jury "either directly or by implication, that they should put themselves in plaintiff's place and render such a verdict as they would wish to receive were they in plaintiff's position." (*Id.* at 5 (quoting *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 463 (S.D.N.Y. 2003).) The reptile theory, which apparently derives its name from a 2009 book on plaintiffs' trial strategy in tort cases, consists of arguing that "the appropriate measure of damages is not the amount of harm actually caused in the case, but rather the maximum or cumulative harm that the defendant's alleged conduct could have caused." (*Id.* at 6.)

Although arguments may not be designed to inflame or impassion a jury, *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005), "[a] district court is entitled to give attorneys wide latitude in formulating their arguments." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999). EML's broad objections to possible trial strategies that may be employed in summation are not appropriately before the court on the present motions *in limine*. As several courts have observed when presented with similar "reptile theory" arguments, "[t]he [c]ourt is

15

being asked to rule on abstract and generalized hypotheticals" rather than specific "language, phrases or evidence the [c]ourt should deem improper." *Baxter v. Anderson*, 277 F. Supp. 3d 860, 863 (M.D. La. 2017); *see also Manion v. Ameri-Can Freight Sys. Inc.*, No. 17-CV-3262 (PHX) (DWL), 2019 WL 3718951, at *6-7 (D. Ariz. Aug. 7, 2019); *Gannon v. Menard, Inc.*, 2019 WL 7584294, at *5 (S.D. Ind. Aug. 26, 2019).

Therefore, the court declines to conclude categorically that "golden rule" and "reptile theory" arguments are improper. The cases to which EML cites to claim that the "golden rule" argument is barred make clear that only golden rule arguments regarding *damages* are improper, but such an argument is entirely permissible with respect to liability. *See, e.g., Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 463 (S.D.N.Y. 2003) ("The well established 'Golden Rule,' also known as the 'bag of gold' rule, prohibits counsel from telling the jurors, either directly or by implication, that they should put themselves in plaintiff's place and render such a verdict as they would which to receive were they in plaintiff's position. *Its application is limited to damages only*.") (emphasis added); *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 432 (S.D.N.Y. 2008) (holding comments inviting jury to "understand[] the gravity of plaintiff's injuries," rather than award the damages "they themselves would want to receive," did not violate the golden rule); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1287 (2d Cir. 1990) ("The court found that all but two of the counsel's alleged appeals to the Golden Rule argument *related to liability only* and not damages and were therefore not improper.") (emphasis added); *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982) ("Spray-Rite's counsel should have refrained from asking the jury to put itself in Spray-Rite's position *when it decided how much to award Spray-Rite*.") (emphasis added). Plaintiffs express no intention to use a golden rule argument regarding damages, and EML's stated fear—that the jury will "decide the case based on

fears that they or members of their community *could be injured as Plaintiffs were allegedly injured*"—goes to liability, not damages. (Defendant's Third MIL at 7 (emphasis added).) Accordingly, such an argument will be permitted, and EML may renew its objection at trial only if Plaintiffs make a golden rule argument on damages.

Similarly, it is impossible to conclude (without specific language and context) whether reptile theory arguments will be inflammatory. Indeed, the only decision in this district to mention the "reptile theory" called such a hypothetical argument "incomprehensible." *Fields v. Bayerische Motoren Werke Aktiengesellschaft,* – F. Supp. 3d –, 2022 WL 905129, at *2 & n.2 (E.D.N.Y. Mar. 28, 2022). While some versions of this argument may improperly inflame the jury, others—like those suggested by Plaintiffs in opposition—would be entirely permissible. (*See* Pl. Opp. to Defendant's Mots. in Limine (Dkt. 70-2) at 5-6 (suggesting that New York anti-discrimination laws intended to protect the public at large, including the jury, from the type of conduct at issue here and that punitive damages have deterrent effect).)

Accordingly, Defendant's Third MIL is DENIED. EML may, consistent with the Federal Rules of Evidence and the above ruling, object to specific statements during trial.

### 4. Evidence of Liability Insurance and Settlement Discussions

EML argues that Plaintiffs should be precluded from introducing (1) evidence that EML is insured against liability or (2) evidence of settlement discussions. (*See generally* Defendant's Fourth MIL.) Federal Rule of Evidence 408 states that evidence of settlement offers, and conduct or statements made during settlement negotiations, is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Federal Rule of Evidence 411 states that "[e]vidence that a person was or was not

17

insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."

In response, Plaintiffs represent that they will not introduce evidence of insurance or settlement discussions for any purposes. (*See* Pl. Opp. to Def.'s Mot. in Limine at 6.)

Accordingly, Defendant's Fourth MIL is DENIED as moot. *See McLeod v. Llano*, 17-CV-6062 (ARR) (RLM), 2021 WL 1669732, at *9 (E.D.N.Y. Apr. 28, 2021); *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *8 (S.D.N.Y. July 30, 2021). EML may renew its objection if Plaintiffs seek to introduce such evidence.

### IV. CONCLUSION

For the reasons stated above, Plaintiffs' MIL is GRANTED IN PART and DENIED IN PART; Defendant's First MIL is GRANTED; Defendant's Second MIL is DENIED; Defendant's Third MIL is DENIED; and Defendant's Fourth MIL is DENIED as moot.

SO ORDERED.

Dated: Brooklyn, New York
October 18, 2022

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge